**SOUTH MAIN AKRON, INC., Plaintiff-Appellant, v. LYNN REALTY, INC. et, Defendants-Appellees.**

Ohio Appeals, Second District, Franklin County.

No. 4639. Decided November 19, 1951.

Robert Dow Hamilton, Columbus, for plaintiff-appellant.
Vorys, Sater, Seymour & Pease, Columbus, for defendants-appellees.

## OPINION

By MILLER, J.

This is a law appeal from the judgment of the Common Pleas Court overruling the plaintiff's motion for the appointment of a receiver. We have no bill of exceptions, but in lieu thereof counsel have agreed to the following stipulation:

"It is agreed between counsel for the parties that in the trial court, upon the motion for a receiver, the Court, after hearing the opening statements of counsel and without the taking of any evidence denied the motion for a receiver and overruled the same."

The pertinent parts of the judgment entry recite the following:

"This cause came on to be heard on Plaintiff's motion for the appointment of a receiver to take charge of leased premises and to collect the rents.

"This is an action for damages arising out of the sale of real estate by defendant Lynn Realty, Inc. to plaintiff on which there was a 99 year lease. The evidence discloses that up to the present time the lease rental has been regularly paid to plaintiff by the assignee of the 99 year lease, and the Court finds that until plaintiff has established a right to recover damages, the application for the appointment of a receiver is premature and overrules plaintiff's motion."

It will be noted that the entry recites:

"* * * that until plaintiff has established a right to recover damages, the application for the appointment of a receiver is premature."

Counsel for the appellees admit that such a finding goes to the "entire merits of the plaintiff's claim, not alone to the question of damages, but as to the sufficiency of the cause of action stated." The finding is therefore tantamount to the sustaining of a demurrer to the cause of action. The real question therefore presented goes to the sufficiency of the petition. The portion involved in this appeal concerns an anticipatory breach of contract for the leasing of real estate, the petition alleging that Lynn Realty, Inc., was lessee of certain real property now owned by the plaintiff, for a period of ninety-nine years, a portion of which time has expired, and that the lessee has breached its contract by anticipatory repudiation by reason of its own dissolution and the distribution of its assets, thereby becoming incapable of performing the covenants under the lease. The record reveals that prior to dissolution the lease was assigned to Elizabeth H. Patton, a shareholder, but who did not assume its obligations; that all of the obligations of the lease were met up until the filing of the petition. However, the petition alleges the property has been subleased at a figure far in excess of that specified in the original lease; that this sublease has approximately ten years to run; that after the sublease expires the assignee intends to abandon the lease and since the lessee corporation has dissolved, the plaintiff will not be able to enforce the covenants of the original lease. A receiver is sought for the purpose of preserving the rent now being paid under the sublease as an asset of the dissolved corporation and which was assigned to one of the shareholders upon liquidation.

There can be no doubt that it is now generally recognized that there may be a recovery for damages for breach of contract arising by anticipatory repudiation by a promissor even though the time for performance has not yet arrived. 9 O. Jur. 573; Smith v. Sloss Marblehead Lime Co., 57 Oh St 518. The appellee seems to recognize the general doctrine but is contending that it has no application to leases of real property in Ohio.

This question has frequently arisen in this state in bankruptcy and receivership proceedings, and which cases support the appellees' contention providing the same rule is applicable to the case at bar. Among such cases are Wells v. Twenty-First St. Realty Co., 12 F. (2d) 237; In re McAllister-Mohler Co., 46 F. (2d) 91; Golde v. Golde, Inc., 29 O. N. P. (N. S.) 419. These cases refer to the cases of Rawson

v. Brown, 104 Oh St 537, and Taylor v. DeBus, 31 Oh St 468, as authority for their conclusions. Both of these cases hold that except as modified by statute the common law still prevails with reference to real estate. They do not purport to generalize as to the content of the "common law" beyond the questions immediately involved. They do not purport to limit the lessor's remedies to a recovery of rent as it accrues. On the contrary, Taylor v. DeBus, supra, recognizes the contractual aspect of the landlord and tenant relationship, Judge McIlvaine saying at page 471:

"The liability incurred by such express covenant does not depend upon any privity of estate between the lessor and the lessee; but exists by reason of the privity of contract between them. The ground upon which such obligation rests is essentially different from that of the liability to pay rent, where the covenant is only implied."

We have a situation in the case at bar wherein the plaintiff is not suing for rent but is suing for an alleged breach of covenant existing by reason of the privity of contract, there being no privity of estate between the plaintiff and the defendant, Lynn Realty Company. The ground upon which the plaintiff's action rests is also "essentially different from that of the liability to pay rent." Taylor v. DeBus, supra. Though the liability of a tenant to a landlord for the payment of rent is double, there is both privity of estate and privity of contract. The tenant is liable for the rent as it arises out of the land, i. e., accrues, by reason of the tenure existing between himself and the landlord and solely as an incident of the law of real property. He is also liable by reason of the covenant to pay rents, i. e., because he has promised to pay it; and this liability arises under the law of contract. The classical exposition of this doctrine of the double aspect of the obligation of a lessee is in Walker's Case, 2 Coke, 22 a. (1587) where an action of debt was held to lie against an original lessee for rent which accrued after an assignment by him—"for the privity of contract remains notwithstanding the assignment." This analysis of the relation has not been questioned seriously since Walker's Case and under such an analysis, while a lessee cannot be held for "rent" (in the property sense) which has not accrued, he nevertheless can be held for damages which have arisen from his breach of contract. Such damages are not the rent, although the amount of the reserved rent naturally bears on the determination of the damage, along with other factors. The question involved herein seems to have been passed upon several times in this state where the question of insolvency or bankruptcy was not involved.

In the case of Kirland v. Wolf, 7 O. D. Repr., 436, 3 W. L. B. 114 (1878) the defendant had contracted to lease property from the plaintiff for one year beginning June 1, 1874. On May 28, the defendant wrote that he would not perform. The plaintiff rented to another party on January 1, 1875, and, after June 1, 1875, brought an action for $2000.00 "damages" which was the amount of the reserved rent. A judgment for the defendant was reversed by the Superior Court of Cincinnati. The court said:

"Upon the facts we think it is clear that after May 28, 1874, when the defendant refused to perform his contract, which was before he had any right to possession, and while the possession and legal right thereto were in the plaintiff, the plaintiff had the right to do any of three things:

"First—He might have elected to treat the contract as at an end, and if he had done so, neither party could have thereafter sustained an action against the other.

"Second—He might have tendered the lease, fixed up the store and built the addition according to the contract, let the premises stand subject to the defendant's control, and freed of his own, and have sued the defendant monthly for the rent.

"Third—He might do what he did, treat the refusal of the defendant as a breach of the executory contract, keep the premises, rent them to the best advantage to save both parties as far as possible from loss, and sue the defendant and recover the damages naturally and directly occasioned by such breach."

This case probably is not a strong one for the applicability of the doctrine of anticipatory breach, except as approval of the doctrine may be implied from the language of the opinion, since (1) the repudiation by the defendant occurred before the term of the lease was to have begun and (2) the action was not brought until the term contracted for was ended. The opinion, however, does recognize the separate character of the lessee's contractual liability as distinguished from his liability for rent.

Similarly, in Elsas v. Meyer & Co., 10 O. D. Repr., 518, 21 W. L. B., 346 (1889), the dispute involved a repudiation of a contract to take a lease, which repudiation occurred before the time set for performance. Here, however, the action was brought before the end of the five-year term specified in the agreement and the Superior Court of Cincinnati, in an opinion by Judge Taft, held that the prospective lessor, upon showing compliance with the conditions to be performed by him, might maintain the action for damages. The defendant's motion

for judgment notwithstanding the verdict for plaintiff was overruled and the case was remanded for a new trial for error in the charge.

The most significant case, and a rather strong one in its facts, is Wrubel v. Muth, 11 O. C. C. 559, 5 O. C. D., 173 (1896), decided by the Circuit Court of Cuyahoga County. In 1891 the plaintiff, Wrubel, leased property for a period of five years to one Acnovich. Also a party to the lease was the defendant Muth who guaranteed the payment of the rent for the entire term. The lease further provided that if Acnovich should violate the obligations of the lease—"then this lease shall be null and void as far as said **lease** is concerned, and the said George V. Muth shall have full control of the same, and the said Muth alone being bound and being held as lessee." (The court held that the emphasized word "lease" clearly was intended to be, and was treated by the parties as though it were, "lessee.") After about one year of the five-year term Acnovich abandoned the premises. Defendant Muth then assumed possession and shortly thereafter he too abandoned repudiating the contract. The plaintiff-lessor brought the action in December, 1892, after only a little more than a year of the five-year term had elapsed. The trial court charged that the plaintiff-lessor could recover only for the rent which had accrued prior to the filing of the suit. The Circuit Court held this was error and reversed. The court said (pp. 561, 562):

"We think there was clearly error in that charge of the court. We think it clearly is a case where a suit could be brought for damages because of the repudiation of the contract by the defendant; that a single suit for the breach of that contract, not only could be, but was the proper suit to be brought, and therefore the court should not have limited the damages simply to that which accrued by reason of failure to comply with the covenant to repair and the rents accrued up to the bringing of the suit, but should have allowed the jury to inquire what were the entire damages of this plaintiff for breach of that contract."

We think that the insolvency cases cited should not be controlling for the reason that they present considerations of policy not present in the instant case. It is apparent that in the distribution of the property of an insolvent lessee the allowance of the full claim for anticipatory breach presented by the lessor may result in a very large, and perhaps inequitable, share of the property going to the lessor, to the detriment of other creditors of the lessee.

It is worthy of note that, since the cases referred to were

decided, the Bankruptcy Act has been amended to make claims for anticipatory breach of leases provable in the bankruptcy of the lessee. Section 63a of the Bankruptcy Act, as amended 1934 and 1938, now lists among claims which are provable in bankruptcy:

"* * *

(9) Claims for anticipatory breach of contracts, executory in whole or in part, including unexpired leases of real or personal property * * *."

The section then limits the amount allowance as a claim for damages for anticipatory breach by a lessee to an amount not exceeding one year's reserved rent plus past due rent. This limitation was designed to prevent a lessor's getting the lion's share of the bankrupt's property. 3 Collier on Bankruptcy (14th Ed., 1899).

It is further urged by the appellees that the doctrine should not be applied to lease contracts for the reason that it becomes unilateral after the lessee takes possession. It may be conceded that there can be no anticipatory breach of a unilateral promise where the promisee has fully performed, but such is not the case with leases even after the lease has taken effect as a conveyance; the landlord's covenant of quiet enjoyment is a continuing one and the covenant to pay rent is dependent upon the covenant of quiet enjoyment, the breach of which by an eviction suspends all liability for rent, contractual or otherwise. As stated by the court in Hawkinson v. Johnston, 122 F. (2d), 724, 137 A. L. R., 420 (CCA 7th, 1941):

"The contract of the lease here was in part still executory on the part of plaintiff (lessor), since he was obligated by specific and continuing covenants to assure the quiet enjoyment of the premises during the term of the lease, and, also, at all times to defend the title. These covenants were in a sufficient sense interdependent with the lessees' obligation to pay rent, since the payment of rent at any particular time necessarily was conditional on their continued performance."

It is further urged by appellees that even though the doctrine is applicable to lease contracts it is not applicable here for the reason that Lynn Realty, having assigned its interest in the contract, is now only a surety. It is true that the lessee is a surety in a sense. The surety nomenclature, however, is descriptive only of the relation between the lessee and his assignee. None of the other consequences of suretyship are here present. As to the lessor the lessee is still a principal debtor. **McHenry v. Carson, 41 Oh St 212.** And the lessor upon a breach may sue either the lessee or the assignee at his election.

In **Gholson v. Savin, 137 Oh St 551**, the Court held:

"The express contract of a lessee fixes his liability to the lessor for the payment of rent for the whole term; but in case of assignment of the lease by the lessee the liability of the assignee to the lessor is limited to the rent accruing during the continuance of the assignee's interest; and the lessor may, at his election, sue either the lessee or the assignee, or both, for the nonpayment of rental accruing after assignment, but is entitled to but one satisfaction."

The appellee also urges that even though we should find that there has been anticipatory breach, that the plaintiff has not elected to treat it as such. Citing Williston on Contracts (Rev. Ed.) Vol. 5, Sec. 1337, wherein it is said:

"The rights of a party to a bilateral contract of mutually dependent promises upon an anticipatory repudiation by the other party will then be: (1) To rescind the contract altogether and if any performance has already been rendered by the injured party, to recover its value on principles of quasi contract; (2) to elect to treat the repudiation as a breach, either by bringing suit promptly, or by making some change of position; or (3) to await the time for performance of the contract and bring suit after that time has arrived. Even if the plaintiff thus elects to wait until the stated time for performance, he will be excused from the necessity of performing or being ready to perform on his own part unless the repudiating party withdraws his repudiation before a change of position by the injured party makes his performance more burdensome. Indeed, the injured party has no right to recover for subsequent performance if damages will be thereby enhanced."

Also, in Section 1323 of Williston, supra, it is said:

"* * * it has been held that unless the repudiation is withdrawn it operates as a 'continuing offer' of a breach which may be taken advantage of at any time."

Since the repudiation in the instant case was never withdrawn prior to the bringing of the action the plaintiff was entitled to treat it as a continuing breach.

We shall give consideration next to the question of whether or not the voluntary dissolution of the lessee corporation and the distribution of its assets to the shareholders constitutes an anticipatory repudiation giving rise to an immediate cause of action. We are of the opinion that the general law with respect to the acts constituting such an anticipatory repudiation are applicable to the facts in this case. Restatement of Contracts, Sec. 318, as Amended, Supp. 1948, lists any of the following as constituting an anticipatory repudiation which is a total breach of contract:

"a. A positive statement to the promisee or other person having a right under the contract, indicating that the promisor will not or cannot substantially perform his contracted duties;

"b. Transferring or contracting to transfer to a third person an interest in specific land, goods, or in any other essential for the substantial performance of his contractual duties.

"c. Any voluntary affirmative act which renders substantial performance of his contractual duties impossible, or apparently impossible."

It is generally held that the dissolution of a corporation is a repudiation of its executory contracts, at least where said dissolution is voluntary, and that an action for anticipatory breach will lie. A leading case is Okmulgee Window Glass Co. v. Frink, 260 Fed. 150, cert. den., 251 U. S. 563, 64 L. Ed. 415, 40 S. Ct. 342. A corporation, being under contract to pay minimum patent royalties over a period of time, was voluntarily dissolved and its assets transferred to another company. It was held that the dissolution of the corporation was a breach, that its assets became a "trust fund" subject to the payment of the debts of the company and that personal judgments might be obtained against persons who had converted those assets to their own use. The court said (p. 163):

"A voluntary dissolution of a solvent corporation gives no relief from liability upon existing contracts and obligations. As to contracts partly or entirely executory the dissolution is regarded as a breach because the corporation has voluntarily incapacitated itself to further perform. The other party to the contract is placed by such act of dissolution in the position of one to whom further performance of the contract has been definitely and finally refused. He can recover for the resulting damage on the entire contract, executory as well as executed."

In the case of Kalkoff v. Nelson, 60 Minn. 284, a corporation which was lessee under a ten-year lease was dissolved and a receiver appointed. It was held that by the dissolution the corporation was disabled from performing the obligations of the lease; that the breach of the contract to pay rent for the unexpired term was total and final and that thereupon a cause of action accrued to the lessor for all damages, present and prospective, the court saying:

"* * * In the case at bar the corporation has, by its voluntary dissolution, practically committed suicide, and when its estate is administered it ceases to exist. Therefore, if the corporation cannot be held liable for a total breach of its executory contracts, the law has armed it, and all other domestic corporations, with the power to repudiate all the

obligations of their executory contracts by simply instituting proceedings by its stockholders for a voluntary dissolution. It is clear that the corporation must be held liable in damages for its total breach of its executory contract to pay the rent reserved in the lease for the full term."

We are of the opinion that the petition states a good cause of action and that the trial court erred in holding that the application for the appointment of the receiver was premature, and that it was first incumbent upon the plaintiff to establish a right to recover damages. The appointment of a receiver is not a matter of equitable right; hence, no positive or unvarying rule can be laid down as to whether the court will or will not interfere by this kind of interim protection of the property. The question of whether or not a receiver will be appointed in a given case is addressed to the sound discretion of the court under all the circumstances. This discretion is not arbitrary or absolute but is a sound and judicial discretion taking into account all the circumstances of the case, exercised for the purpose of promoting the ends of justice and of protecting all the rights of the parties interested in the controversy and subject matter and based upon the fact that there is no other adequate remedy or means of accomplishing the desired objects of the judicial proceedings. It must be governed by legal and equitable principles, the violation of which will amount to its abuse and must not be influenced by the technical legal rights of the parties but by all the equities of the entire case. **34 O. Jur. 948, Sec. 7.** We are of the opinion that the legal principle announced by the court required a higher degree of proof of damages than is necessary to sustain the appointment. The court should have given consideration to whether or not there was reasonable probability that the plaintiff would ultimately succeed in obtaining the general relief sought. This required the production of evidence and which the court refused to hear and consider.

The judgment will be reversed and the cause ordered remanded for further proceedings according to law.

HORNBECK, PJ, WISEMAN, J, concur.