JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant/counterclaim-defendant, Reserve Transportation Services, Inc. ("Reserve Transportation") and Richard Plociak ("Plociak"), third-party defendant/appellant, collectively referred to as "appellants," appeal the decision of the trial court. The trial court granted defendants-appellees' motion for the appointment of a receiver. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the trial court.
 I. {¶ 2} According to the case, this consolidated appeal involves a dispute between the controlling and noncontrolling shareholders of Reserve Transportation. Plociak held a director's meeting on March 18, 2004 and his two partners, Michael Burbach ("Burbach") and Ronald Rosalina ("Rosalina"), were terminated. As a result of the meeting and subsequent terminations, Plociak, along with his wife and daughter, received control of the company.
 {¶ 3} Simultaneous with the firing of its minority shareholders, Reserve Transportation filed an action in common pleas court against Burbach for breach of fiduciary duties and for declaratory relief. Burbach answered and filed his own counterclaim and third-party complaint against Plociak for breach of fiduciary duties, an accounting and injunctive relief. Rosalina subsequently intervened in the action to assert breach of fiduciary claims against Reserve Transportation and Plociak.
 {¶ 4} During the early stages of the litigation, the parties accepted the recommendation of corporate counsel and hired Stout Risius, Ross, Inc. ("Stout Risius") to appraise Reserve Transportation. Stout Risius issued a report valuing Reserve Transportation at a total of $7,464,425. Based upon the equal one-third equity interests of the three shareholders, Burbach and Rosalina would each be entitled to receive $2,488,141.60.
 {¶ 5} The Stout Risius report was rejected by corporate counsel, who then sought to invoke provisions of the shareholder agreement that allowed corporate counsel and the corporate accountant to select other appraisers. The other appraisals were substantially lower than the Stout Risius report.
 {¶ 6} Corporate counsel selected Tidwell DeWitt Business Consulting Group ("Tidwell") and it appraised Reserve Transportation at $875,000. The corporate accountant selected Loveman-Curtis, Inc. ("Loveman"), which appraised Reserve Transportation at $548,000. Both appraisals commissioned by Reserve Transportation indicated that the company was in imminent threat of insolvency.
 {¶ 7} Burbach and Rosalina moved the trial court for the appointment of a receiver on September 3, 2004. Reserve Transportation filed its brief in opposition to the appointment of a receiver on September 13, 2004. Prior to the hearing, Burbach and Rosalina filed a joint brief submitting three appraisals and outlining several reasons to appoint a receiver. A hearing was conducted on January 7, 2005, and the trial court issued a written opinion and journal entry on January 20, 2005. The court appointed a receiver for the limited purpose of overseeing the appraisal of Reserve Transportation's fair market value. It is from this order appointing a receiver that Reserve Transportation and Plociak filed the instant appeal.
 {¶ 8} According to the facts, Reserve Transportation is an intermodal trucking company. Intermodal shipping involves transportation by more than one form of carrier during a single journey. For example, goods produced offshore are delivered via sea vessel in containers, and are then delivered to their final destination via rail and/or truck. Reserve Transportation is primarily involved in the latter state of transportation, transporting containers between rail yards and customers. It contracts with approximately 250 independent owner/operators of trucks to transport its customers' containers.
 {¶ 9} Burbach started Reserve Transportation in 1999 with two other individuals. Later that year, Plociak purchased an interest in Reserve Transportation. As a result, Plociak, Burbach, and Rosalina became equal equity shareholders of the company, although Plociak retained 52 percent of the company's voting shares.
 {¶ 10} On December 1, 1999, Burbach, Rosalina and Plociak entered into a shareholders' agreement with Reserve Transportation for the ownership of 100 shares of capital stock in the company. At that time, Plociak retained 52 shares, with Burbach and Rosalina equally splitting the remaining 48 shares, 24 shares each. On May 31, 2002, Burbach, Rosalina and Plociak amended the shareholders' agreement after changing from a C-corporation to an S-corporation. The original 100 shares distributed via the December 1, 1999 shareholders' agreement became Class A voting shares, and Burbach and Rosalina were each given 28 additional shares of Class B, non-voting capital stock. Thus, each shareholder owned 52 shares of stock in the company, entitling each to equal distributions of profits.
 {¶ 11} The May 31, 2002 amendment to the shareholders' agreement also amended the procedure for the purchase of shares upon the termination of employment of any shareholder. The shareholders' agreement, as amended, provides that a shareholder is obligated to sell his shares to the corporation upon his termination. If the parties cannot agree upon a purchase price for the shares within 30 days of the termination, the purchase price of those shares is to be determined by ascertaining the fair market value of the corporation. The fair market value of the corporation is to be determined by the average of a valuation.
 {¶ 12} On March 18, 2004, the Reserve Transportation board of directors terminated the employment of Burbach and Rosalina and removed them as officers of the company. After the termination, the parties failed to agree on an appraised value for the company. Earlier in the lawsuit and at the request of the trial court, Reserve Transportation's corporate counsel, Michael Ward, suggested that Stout Risius independently appraise the value of the company. The parties and counsel agreed with Ward's suggestion. Stout Risius valued Reserve Transportation at $7,464,425,[1] thereby entitling each of the fired shareholders to receive $2,488,141.60. Reserve Transportation's counsel subsequently rejected the appraisal report.
 {¶ 13} Thereafter, Reserve Transportation's counsel and its accountant each selected a different appraiser to evaluate the company. Corporate counsel selected Tidwell, which issued a report valuing the company at $875,000, and Reserve Transportation's accountant selected Loveman, which valued the company at $548,000. The average of the appraisals was $711,500. Burbach and Rosalina obtained a fourth appraisal from Meaden Moore, Ltd. This report was also submitted to the trial court in the prehearing brief and appraised the value of Reserve Transportation, as of the termination of Burbach and Rosalina, at $5,562,000.[2]
 {¶ 14} Primarily due to the vast differences in appraisals, the parties were unable to come to an agreement regarding the value of the company. Consequently, Burbach and Rosalina filed a joint motion for the appointment of a receiver, which the trial court granted on January 20, 2005. Reserve Transportation filed its appeal to this court on January 27, 2005.
 II. {¶ 15} Appellants' first assignment of error states the following: "The trial court abused its discretion in granting the joint motion of defendant/counterclaim-plaintiff Michael Burbach and intervenor-plaintiff/counterclaim-defendant Ronald J. Rosalina to appoint a receiver over plaintiff/counterclaim-defendant Reserve Transportation Services, Inc., without conducting an evidentiary hearing, without hearing any testimony, and without making any evidentiary findings necessary for the appointment of a receiver."
 {¶ 16} Appellants' second assignment of error states the following: "The trial court erred as a matter of law by finding that R.C. 2735.01(F) justifies the appointment of a receiver to oversee and re-conduct an appraisal process set forth in the shareholders agreement among the shareholders of Reserve Transportation."
 {¶ 17} Appellants' third assignment of error states the following: "The trial court abused its discretion in appointing a receiver over Reserve Transportation without finding by clear and convincing evidence that Reserve Transportation `has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights' pursuant to R.C. 2375.01(E)."
 {¶ 18} Appellants' fourth assignment of error states the following: "The trial court abused its discretion in appointing a receiver over Reserve Transportation that, in effect, voids the procedure set forth in the shareholders agreement without first finding as a matter of law that the shareholders agreement is invalid."
 III. {¶ 19} Appellants claim the court erred because it granted the motion without conducting an evidentiary hearing, without hearing any testimony, and without making any evidentiary findings necessary for the appointment of a receiver. We do not find merit in appellants' argument.
 {¶ 20} Appellants were provided with notice and a full opportunity to be heard at the January 7, 2005 evidentiary hearing. Despite being present, Reserve Transportation's attorney made no effort to address the trial court, present evidence, or proffer any evidence.
 {¶ 21} The record demonstrates that Reserve Transportation was represented at the receiver hearing by attorney Jonathan T. Hyman and that Plociak was also present and individually represented by attorney Donald Scherzer. The judge gave appellants' counsel full opportunity to argue their position.
"The Court is inclined to appoint the use of another receiver at this point in time to obtain another appraisal in order to insure that all of the shareholders' rights are fully protected.
"Now, I will give defense counsel an opportunity to express a reasonwhy that would be an incorrect thing to do. It appears to the Court that there is clear and convincing evidence, because of the wide disparity appraisal values here. And taking into account that corporate counsel, and corporate accountants whose interests, this Court finds to be clearly divergent from the minority shareholders.
"Who wishes to speak, Mr. Scherzer or Mr. Hyman[?]
"MR. SCHERZER: I certainly would like to speak on behalf of Mr. Plociak. Your Honor, the Stout Risius report was obtained for purposes of facilitating a possible settlement * * *.[3]
(Emphasis added.)
 {¶ 22} The testimony and evidence in the record demonstrates that Reserve Transportation, in contravention to its claims, did indeed have several opportunities to be heard at the trial court level. Moreover, appellants failed to object to the trial court's conduct. Appellants' failure to object to the alleged conduct constitutes a waiver of the alleged irregularities.
 {¶ 23} Generally, if a party has knowledge of an error with sufficient time to object before the judge takes any action, that party waives any objection to the claimed error by failing to raise that issue on the record before the action is taken. Tissue v. Tissue, Cuyahoga App. No. 83708, 2004-Ohio-5968; Belvedere Condominium Unit Owners Assn. v. R.E.Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 279; Mark v. Mellott Mfg.Co., Inc. (1995), 106 Ohio App.3d 571, 589; Sagen v. Thrower (Apr. 8, 1999), Cuyahoga App. No. 73954. Therefore, a litigant who had the opportunity to raise a claim in the trial court, but failed to do so, waives the right to raise that claim on appeal. Id.
 {¶ 24} Accordingly, appellants' first assignment of error is overruled.
 IV. {¶ 25} Based on the substantial interrelation between appellants' last three assignments of error, we shall address them together in the following section.
 {¶ 26} An abuse of discretion implies more than an error of law or judgment. Rather, abuse of discretion suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. In re Jane Doe1 (1991), 57 Ohio St.3d 135; Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 27} The appointment of a receiver is a final appealable order.Jamestown Village Condominium Owners Assn. v. Market Media Research,Inc. (1994), 96 Ohio App.3d 678, 689.
 {¶ 28} R.C. 2735.01, appointment of receiver, states the following:
"A receiver may be appointed by the supreme court or a judge thereof, the court of appeals or a judge thereof in his district, the court of common pleas or a judge thereof in his county, or the probate court, in causes pending in such courts respectively, in the following cases:
"(A) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;
* * *
"(E) When a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights;
"(F) In all other cases in which receivers have been appointed by the usages of equity."
 {¶ 29} The trial court determined that either R.C. 2735.01(E) or2735.01(F) justifies the appointment of an appraiser in the case sub judice. The trial court stated the following:
"Reserve Transportation has argued, through the appraisals of Loveman-Curtis and Tidwell DeWitt, that the corporation's value has diminished, and that several factors may result in an imminent danger of insolvency. Therefore, by its own appraisers' assertions, subsection (E) of R.C. 2735.01 applies.
"In the alternative, the Court concludes that subsection (F) of R.C.2735.01 applies to this case. If the Tidwell and Loveman appraisals are incorrect, and if the Corporation is on solid financial footing as suggested by the Stout appraisal, it would be inequitable to allow Reserve Transportation to enforce against Burbach and Rosalina the buy/sell agreement at a grossly discounted rate. The Court concludes that the state provides it with equitable power in such a situation to intervene with the appointment of a receiver, so that a fair and equitable price may be set for the shares.
"The Court concludes that [t]he buy/sell provision of the Shareholders Agreement has broken down, due primarily to the irreconcilable disparities between appraisals."
 {¶ 30} R.C. 2735.01(E) and (F) apply in this situation. Given the facts of this case, either section of the Revised Code, on its own, supports the appointment of a receiver. Moreover, we find the shareholders' agreement, solely as it relates to appellants' argument, to be subverted. This is partly evidenced by the substantial difference in appraisals and the contentious conduct of the parties.
 {¶ 31} In addition, the appointment of a receiver by the trial court was not for the purpose of managing Reserve Transportation's assets. Rather, the receiver was appointed for the limited purpose of administering an unbiased appraisal of Reserve Transportation. The approximately seven million dollar difference between the Stout Risius and Tidwell and Loveman appraisals demonstrates a significant breakdown in the valuation process.
 {¶ 32} Based on the evidence, we do not find merit in appellants' claim that the lower court abused its discretion in appointing a receiver over Reserve Transportation without finding by clear and convincing evidence that Reserve Transportation "has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights pursuant to R.C. 2375.01(E)." Furthermore, we find that the evidence demonstrates that the lower court did not err in regard to the shareholders' agreement.
 {¶ 33} As previously stated, the shareholders' agreement has broken down, due to the significant and irreconcilable discrepancies in appraisal values. The approximately seven million dollar difference in value is substantial. Moreover, it demonstrates severe incongruency between the Stout Risius and Tidwell and Loveman appraisals. This inconsistency is significant enough that an objective third party needs to rectify the matter. Under these circumstances, the trial court's appointment of a receiver is appropriate and justified under R.C. 2735.01.
 {¶ 34} "The question of whether or not a receiver will be appointed in a given case is addressed to the sound discretion of the court under all the circumstances." State ex rel. Celebrezze v. Gibbs (1991),60 Ohio St.3d 69, 73, citing South Main Akron, Inc. v. Lynn Realty, Inc.
(App. 1951), 62 Ohio Law Abs. 103, 106 and Consolidated Rail Corp. v.Fore River Ry. Co. (C.A. 1, 1988), 861 F.2d 322.
 {¶ 35} "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256.
 {¶ 36} With this direction in mind, we conclude the trial court did not abuse its discretion. R.C. 2735.01 gives the court the power to appoint a receiver in this instance. In this case, the trial court felt in its discretion that the conflicting, incongruent appraisals created irreconcilable disparities requiring the appointment of a receiver. Nothing in this record suggests to us that we should disturb that conclusion.
 {¶ 37} Appellants' second, third and fourth assignments are overruled. The trial court's decision is hereby affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., Concurs;
McMonagle, J., Dissents (See Separate Dissenting Opinion.)
[1] R. at 122, see Exhibit A.
[2] See Exhibit D.
[3] Tr. at 7.
 DISSENTING OPINION